Dixon v. EDU-HI Good morning, your honors. May it please the court, my name is Ryan Harimoto, and I represent the appellant plaintiff Stephanie Dixon in this matter. And I was excited to say that my client would be here, but she got caught in a five-car accident, so I don't think she's going to be making it. But in any event, your honors, if at all humanly possible, I'd like to reserve about three minutes for rebuttal, and I will keep an eye on the clock as well. As a preliminary matter, per the court's prior directive, I will be focusing my argument today on the hostile working environment claim. Appellee has already acknowledged in the record that the hostile work environment claim was timely filed, and therefore I will be primarily focusing on whether the hostile environment claim is sufficiently pled in the second amended complaint for purposes of this court's de novo review of the district court's order granting the second motion for judgment on the pleadings. So viewing the facts in the appellant and resolving all doubt in appellant's favor, appellant respectfully submits that the district court erred in holding that the appellant failed to sufficiently plead the hostile work environment claim in the second amended complaint. More specifically, rather than evaluating whether there were a series of separate acts, which alone may not have been actionable, but collectively constitute an unlawful employment practice, the district court instead applied an additional level of scrutiny by considering first whether each separate act was sufficiently severe or pervasive to constitute a hostile work environment. So for example, at ER 22, which is page 22 of the court's order, when the court specifically addressed a few of the racially hostile remarks that were made by the administration to my client, for example, the principal's comment to my client referring to African-American people, you people constantly change your hairstyles. With respect, as I looked at this, I mean, it seems to me that a hostile work environment in accordance with the case law has to be such that ordinary slights of a minor nature don't qualify as a hostile work environment. You have to have something that is sufficiently repetitive and serious that it really goes to the heart of working in a friendly or peaceful environment. As I look at the allegations here, I mean, they're not very sensitive, but the comment about the hair, the comment about whether she was a good athlete may have been insensitive, but how does that create a hostile work environment, those two instances? So basically what your Honor is referring to is the standard that sets forth in the U.S. Supreme Court's decision in Morgan, and the whole point of the claim is as opposed to discrete acts in support of discrimination claims, the hostile environment claim rather looks at a whole series of acts. I'm putting them all together. When you put them together, I'm struggling with how this becomes a hostile work environment. I mean, in some instances you've got another person of the same race, you've got situations where you don't point out somebody that's of a different race where there was a disparate treatment. I'm just struggling with how this fits into the requirements of the pleading. So it's the appellant's position taken together. I mean, we just have a disagreement in terms of, again, whether it was sufficiently pled, but... Let me do it this way. Lay out the totality of the hostile work environment incidents that you believe add up to a hostile work environment, and if you will, put time frameworks to them as well, because some of them are years apart. Well, that's why one of the focuses on the hostile work environment claim, because as opposed to claim of just discrete acts of discrimination, the events outside the filing period in the hostile work environment claim can be considered in terms of assessing liability. And that's why it's so important here. Well, that's true, but I'm just saying, help me by delineating what are the hostile work environment conditions that occurred, which in the aggregate you believe add up to a hostile work environment. When did they occur? Sure, and I actually prepared a list here in anticipation of that question. So the first one is, at one point there were only two African American employees in the entire school, at the elementary school. And for no legitimate reason whatsoever, the principal placed my employee in the same office to share that office space, even though the behavioral health specialist, which is the other African American employee, needed a private work space to deal with behaviorally challenged students. And my client as well, as a counselor, needed a private work space to meet with students or parents, and whenever either of them needed to have a meeting, the other would have to go find some place to do their work. Whereas my client's white, Caucasian counselor counterpart had his own conference, had his own office where he could meet with people that was large enough for conferences. Correct me if I'm wrong. My understanding is that in this situation, there wasn't much room for anybody, white, black, whomever. All these people in this particular setting had very, very poor office housing situations. Is that incorrect? I don't think that there's anything in the record that suggests that. In fact, because we're still at the motion for judgment on the pleading stage, we haven't heard what the explanations are. I thought in what was presented that that was clarified, perhaps. Yeah, with respect, Your Honor, I don't recall seeing anything like that in the record in terms of an explanation provided by the state. And again, we weren't even at the summary judgment stage yet, so we haven't heard whether there were legitimate business reasons for that. Let's take this as a given. Is there an allegation that the placing of these two people, but very short term as I recall, but they put those two people together, is there an allegation that it was done so for a racially hostile reason and it was articulated? Well, that coupled with the other incidents I'm about to mention. No, say them one at a time. Was there any racially hostile statement made, we're going to put you two people together because you're a certain color, and that's why we're doing it. Anything like that. So, Your Honor, that's my issue, I guess, in terms of discussing it that way, because in a hostile work environment claim, we don't address each individual act as to whether it's discriminatory on its own. You're going to ask, if you're going to have a racially hostile work environment, race has to be a factor in why these people were treated the way they were. Sure. And I find an allegation that they were put there because of hostility based on race. Right. Well, just in general, in discrimination cases, we do consider statistical evidence. So, to that extent, it cannot be just a coincidence that of the, I don't know, maybe 100 or so employees there, that the only two African-American employees are put together in the same office with absolutely no legitimate reason for them to be sharing an office space. They're not in the same position. They both need private meeting areas to meet with students, especially the school behavior health specialist. But I think what's also important is that... So, you're implying a racial motive. We are, based on the statistical evidence. But I think the next issue actually feeds into that, because once the other African-American employee left, within months after that, my client was then put into literally a converted closet space as her office, while, again, her white counterpart was allowed to work out of the library conference room, which we're saying is about five times larger than my client's now closet space that she has to work out of. And there's no legitimate reason for that. She had more seniority than him. They're the same position. There's really just no legitimate reason for her to have been put into a converted closet space, which, again, she was unable to conduct meetings in that small of a space and had to go out and scrounge for meeting areas to meet with students or parents. And again, now she's the only African-American employee in the school. And we couple that with coming off the heels of her having to share an office space with the only other African-American employee in the school. What was the white person that was put in the library? Did he, I guess, in this case, did he have space to conduct similar private interviews with people? Absolutely. It was in the library conference room. So it was much larger and private so that he could conduct his meetings with students or parents without having to go out searching for a place to meet, unlike my client who had to do so. Because in this case, because you don't allege racial statements or context, you say that you have shown by disparate impact, basically, you've shown statistically that this is discrimination. I mean, that is part of it, Your Honor. We understand that there are issues, obviously, with just a straight discrete act discrimination claim because of the timeliness. There are a few of the acts that were within the filing period, which just like in the classic hostile work environment type claim, at least one of the acts has to be within the filing period. And if there's a sufficiently hostile work environment, then they all can be considered, even the ones outside of the filing period. Just because your time is running out, I'd like to hear the rest of your list. OK, sure. Go through each of them a little bit more quickly. Absolutely. So the next one was, as opposed to her white counterpart, she was given additional duties, even though they were supposed to have the same duties as school counselors. And in the district court's order, he noted that we hadn't even alleged who ordered that additional responsibility. But it is in the record and in our brief, in the motion, in our opposition to the motion at the lower court, that the principal had sent an email to the teacher specifically saying that if you need help with extra work to ask Stephanie, you know, not specifically not the other counselor. So in additional duties, and there is case law specifically saying that with additional duties that is considered an adverse employment action. Was there anything said at the time that this was being done because of her race? Not specifically that particular incident. There were those straight comments that we that we've talked about, which we feel link here in the athletic ability. Correct. What they made to her. Correct. Correct. Next one real quickly is when my client was going to be absent, she was required to find a replacement, whereas her counterpart was not. And there was even one situation where it was so egregious that my client had found a replacement for her and it just so happens that her counterpart needed that particular day off as well. And the vice principal told the person who my client had previously found as her replacement that that person needed to cover for the other counselor and to force my client to go out and get someone else. So, again, that's another instance of that. The straight comments and the the assault that occurred in August 2012, which was in the home of a parent of a student who she was assigned to work with. There had been prior warnings by other teachers to the administration of that this person, this parent was could fly off the handle, was dangerous. No one warned my client about that. She was assaulted. Was that based on race? The assault? Yeah, there's no we're not arguing that the assault was race based. But what we are saying is that even after the assault occurred and my client filed a police report against this parent, she she pled with the administration to have the other counselor take over this student's case, obviously, because of what happened with the criminal complaint. But they refused. And the rationale was that her counterpart didn't do well with change. So they left my client stuck with having to still counsel the student whose parent had assaulted her and with an ongoing police report. And in fact, because of their refusal to do that, she ended up needing to go out on leave. And there's no dispute that I mean, it's a work comp claim. The state's own IME physician found that it was a work related stress claim, meaning that it arose from what happened to her at work. And that was from October of 2012. And to this very day, seven years later, she's still out on work comp leave. The state has not taken any position that she should be able to go back to work despite it. They're still basically acknowledging that she's disabled from work due to the stress that was caused in the workplace. And another incident, too, in April 2012 was when the principal called her over the PA system in front of everyone, the whole school had to come out to the walkway and just berated her for just unreasonable items in front of faculty and parents, which is something that she would never have done with the other counselor. And those are the specific and I did I did raise also the international baccalaureate training that she was denied, even though she was assigned to conduct part of it. That was the last incident on my list. Thank you. Thank you. Good morning, counsel. Good morning, your honors. May it please the court, William Levins, Deputy Attorney General on behalf of the Apele State of Hawaii Department of Education. Now, in evaluating the plaintiff's hostile work environment claim, the first issue I think that must be addressed is which acts specifically can qualify for purposes of the hostile work environment claim as opposed to individual discrete acts, especially those which have been time barred. So in its order, the district court acknowledged that it was, quote, questionable whether, excuse me, that the plaintiff was allowed to include individual discrete acts, but it did nonetheless include them for purposes of its evaluation of her hostile work environment claim. Our position is that whether you include the nondiscrete acts and the discrete acts or whether it's just the nondiscrete acts, the claim is deficient in any event. But I think that under this court's guidance in Porter, the court makes clear that in evaluating a hostile work environment claim, we are only to consider the nondiscrete acts. So, and looking at... Why would we, I don't remember that case saying that, why would we do that? What case are you relying on for that? Your Honor, I am relying on Porter versus California Department of Corrections. It's a 2004 case from this court, and I'm quoting from the language dealing with the hostile work environment claim. It's on page 893, and in that case, the court said, consequently, we refuse to mix discrete acts like tinder with the planks of ancient sexual advances, and then regardless of whatever it was that set the spark in the furnace, call the fire that ignites therefrom a hostile environment. If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely nondiscrete acts. And then in evaluating Porter's claims, the court went on to separate those discrete acts, such as refusing her request for vacation or holidays, requiring her to be medically tested by her own physician. What do you conceive of as nondiscrete acts that would qualify? In this case? No, in any case. In any case, the nondiscrete acts would be the classic acts that form the basis of a hostile work environment claim. It's not something... Like what? Like racially insensitive comments. For instance, in this case... Those are discrete acts. They add up over time, but they're discrete acts if you look at each one individually. That's all the plaintiff is saying here. Well, if they're discrete acts, then... Well, everything is a discrete act in the moment it happens. That's my point. There's no... Your definition of nondiscrete acts consists of what? It's a discrete act for the purpose of the unlawful employment practice. So when you're evaluating, for instance, a disparate treatment claim, the discrete act is specific to this case, the failure to send her to the training allegedly based on her protected status. Right. And we're not talking about the disparate treatment claim here. We're talking about the hostile work environment claim. And I'm saying in every case that I'm familiar with, the way the plaintiff gets to showing that the work environment, that the environment was sufficiently, whatever, severe and pervasive I think is the standard. You do that by piecing together a whole bunch of discrete acts. They add up collectively, even though, you know, maybe if you were to look at each one of them individually, they might not be the basis for an actionable disparate treatment claim, but collectively they can add up. And is there some other category? That's why you use the nondiscrete acts. I don't even know what that would be. Well, as in Horter, the court divided into the discrete acts and the nondiscrete acts. And specific, the discrete acts were things that happened that could be tied to an individual day in that that would be the unlawful employment practice. So the nondiscrete acts in Horter were that one of her supervisors had sexually propositioned her and made offensive comments to her. There were other offensive comments. One of them spit in her food and ate it. So these are things that on their own. That's a nondiscrete act. That's a nondiscrete act under Horter because it's not the basis of a claim of disparate treatment. We're talking about a hostile work environment. Not necessarily disparate treatment, but some sort of discriminatory act that can be tied to adverse action as opposed to the hostile work environment where the unlawful employment practice is the ongoing allegation of several small acts that I don't mean to say small, but small meaning that they don't necessarily on their own arise to an actionable discriminatory claim. Okay, that's what I said, that you couldn't ground a disparate treatment claim just on that one act. But again, so let me just understand your position here is that the collection of, I would call them discrete incidents that your opponent kind of laid out for us nicely. Those are not sufficient because what, if you look at each one of them, there wasn't enough sort of racial animus infused into them or what, that if you look at them collectively, even if you assume that all of them were based on some kind of racial animus, they didn't make their work environment sufficiently hostile. I mean, what's your position on that? Both, Your Honor, and also the vast majority of these discrete acts that are alleged by the plaintiff occurred during the period beyond 300 days from when she was required as a prerequisite to filing suit, to issue a charge. And that's okay in the hostile work environment context. So that's not a, you can't then just say, so we get to ignore all of the discrete acts that occurred prior to the 300 day. I don't think that they can necessarily, or they should necessarily be ignored. They can still provide context to things that happened in the hostile work environment claim. They can still provide evidence of some sort of animus or discriminatory reason for any of the alleged conduct that was timely, except I think under Porter, they cannot be included as hostile work environment acts that are, that can be used to form the basis of the hostile work environment claim. However you describe it, I, you know, my colleague, and I agree with him, suggests that these kinds of claims are made up of discrete acts. What I understood the district judges have decided here is that when you look at these things, both individually and collectively, they did not show a violation of something under a protected practice, if you will, practice class, and that they were basically de minimis. And so even when you had them all up, they don't qualify because there's got to be much more than just insensitive, unfortunate things, but they're not based upon, in this case, racial classification. Is that your reading of the complaint as well? Yes, Your Honor, absolutely. And I think the district court was correct and should be affirmed for those findings, primarily because the plaintiffs, the specific facts alleged by the plaintiffs in the complaint are so lacking when compared to existing cases cited by both the appellant, myself, as well as the court and its order, which actually do find hostile work environment claims. So I would also just point out that while the appellant has pled discrimination claims based on race, color, as well as gender, almost all of the, or any of the even arguable discrimination is solely focused on the race. The complaint is, besides the simple fact that the male counselor is a male, is devoid of any kind of indication that there was any discrimination against her for her gender. So the district court, as I said, correctly found that not only were either the aggregation of the acts or just the discrete acts sufficiently severe or pervasive to that she failed to demonstrate that they were actually done against her because of some protected status. What, what's the inference we would draw that it wasn't based on race? As far as? From the allegations. I mean, there may, might be other facts at some of the judgment that you could provide that would provide context, but based on the allegations, I'm not sure what other reason would we draw, whatever, what other inference would we draw from these incidents other than that they were based on her race? Well, it's the plaintiff's responsibility to put forward the facts to show that inference. I don't think it's the defense's responsibility to establish an absence of facts showing something else. No, I didn't say that. I said, let's just, we're taking the four corners of what's alleged in the complaint. What other inference could one rationally draw from those alleged facts other than that she was treated differently because of her race? That there was some sort of internal workplace dispute going on between her, at least for the majority of the time, supervisor Armstrong, as well as the vice principal Hurley, that was unrelated to race. That there was clearly some sort of clashing of attitudes based on the different work responsibilities and plaintiff simply is making the assumption that because she Well, yes, because when you look at your similarly situated counterpart who happens to be white and that person is not subjected to the same treatment as you, that's why I say, I mean, it's at least a fair inference that perhaps the reason I'm being treated this way and not him is because of my race. And for the purpose of similarly situated, we evaluated that in the context of the disparate treatment claim, not the hostile work environment claim. I understand the inference that your honor is making. Just take the office situation. Again, there might be other facts that contextualize it, but based on the allegations in the complaint, what other inference would we draw given that, hey, I have more seniority than this guy. He has the same job I do. If anyone is going to be relegated to sharing an office or put in a closet, it ought to be him. And instead he's got the big office with a nice private space where he can do his job and I'm stuck over here. And boy, it's kind of odd. I'm the only African American employee here. I wonder what's going on. That just doesn't strike me as a far fetched inference one would draw from that set of facts at all. Yes. And as your honor recognized, we certainly have a different view on that. And I don't want to step outside the record, but looking what's alleged in the complaint, as came up during appellant's presentation, I mean, this is a situation where there's a limited amount of space. I mean, this is a public elementary school. Not everyone is going to be particularly happy with the resources that are available. And that's the situation that happened in this case. Counselor, if I understand correctly on that particular instance, it's really a time barred. And that because it's time barred, it would only come up in a disparate impact situation. Is that right? I think because it's time barred, it could only come up in a hostile work environment claim since the disparate impact claim would be barred. And our position, again, is that since it was an individual discrete act that's tied to a specific day, that it cannot be aggregated and clumped together with the hostile work environment claim just to make it timely. I thought Morgan said the exact opposite. That's why I guess I'm puzzled by your statement. I'm sorry, your honor, I didn't hear the last part. I thought that the Supreme Court's decision in Morgan said the opposite, that you needed at least one act within the time, you know, that was timely. But that as long as you had that, you could, in fact, reach back and at least rely upon other incidents which on their own would be time barred to support your hostile work environment claim. And when making that decision, the Supreme Court separated the two claims, the hostile work environment claim versus the direct claim of discrimination. And so while these individual discrete acts for direct discrimination claims must be within the 300 days or they're time barred, as long as there's one part of the ongoing unlawful employment practice, which is the basis for a hostile work environment claim, then all of the relevant conduct for the hostile work environment claim can be considered. And then in Morgan, the Supreme Court went on to divide the two acts or the two types of acts, both the discrete acts as well as the non-discrete acts. Other questions? Thanks to you both. We've taken you well beyond your time, but we appreciate your arguments. Very helpful to us. Thank you.
judges: Graber, M. Smith, Watford